IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: MARY R. SANITATE     :     CIVIL ACTION
:
:     NO. 07-1516
:

**M E M O R A N D U M**

**STENGEL, J.**                                                                     **March 31, 2009**

This is an appeal from a final ruling issued by the United States Bankruptcy Court for the Eastern District of Pennsylvania. In connection with her June 2005 bankruptcy petition, Ms. Mary Sanitate filed an adversary action against her mortgagee, Green Tree Consumer Discount Company. In that action, she sought a ruling that Green Tree was bound to accept the terms of a prior bankruptcy plan and that the company had violated the Truth in Lending Act[1] and the Home Ownership and Equity Protection Act.[2]

A hearing was held upon Green Tree's motion to dismiss. The Bankruptcy Court granted the motion and dismissed the case upon finding that Ms. Sanitate had failed to demonstrate that she could fund a viable Chapter 13 plan. Ms. Sanitate appeals that

---

[1] The Truth in Lending Act requires creditors to disclose credit terms "accurately and meaningfully" to potential debtors prior to the extension of credit. See 15 U.S.C.A. § 1601(a) (West 2008). Congress sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Id. "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosure of terms." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1988). When a creditor violates a TILA obligation, the consumer may seek to rescind the transaction or recover actual and statutory damages. 11 U.S.C. §§ 1635(a), 1640(a).

[2] Enacted in 1994, the Home Ownership and Equity Protection Act amended TILA. It provides additional protection for consumers from predatory lending practices by imposing additional disclosure requirements to be made before the consummation of a transaction for a high rate mortgage. See 11 U.S.C. § 1639(b).

ruling.  Upon consideration of the record and the parties' briefs, I will affirm the Bankruptcy Court's decision and deny the appeal.

**I. Background**

    **A. Chapter 13 bankruptcy**

When a debtor files for Chapter 13 bankruptcy protection, he or she is given the opportunity to deal comprehensively with both unsecured and secured debt without having to liquidate his or her assets.  Instead, the Chapter 13 debtor may use future income.  Filing the petition also triggers an automatic stay that prevents creditors from taking further actions against the debtor and allows the debtor to continue to keep and use property.  11 U.S.C. § 362 (2006).

The Chapter 13 case revolves around the chapter 13 plan for repayment.  The plan is indispensable and statutorily mandated.  Id. § 1321 ("The debtor shall file a plan."). Only the debtor may propose the plan.  Id.  Within this plan, the debtor sets forth his or her proposals for repaying existing debts and reorganizing his or her financial situation. At this time, the creditors may file "proofs of claim," which set forth the debt owed to them.  See id. § 501.  The creditors may also file objections to the plan.  Failure to file either a proof of claim or an objection may harm the creditor's prospects of recovery.

The exact form of the plan is not strictly scrutinized.  Rather, so long as the plan contains statutorily mandated provisions and clearly lays out how creditors will be paid, it may be accepted.  Under § 1322, the plan must contain provisions for:

>    (1) submission of "all or such portion" of the debtor's future income that is necessary for executing the plan;
>
>    (2) full payment of all claims given priority under § 507, unless the holder otherwise agrees; and –
>
>    (3) the same treatment of all claims within a class, if the debtor has chosen to classify claims under the plan.

See § 1322(a)(1)–(3). Within these requirements, the debtor has wide discretion to set forth how to structure the payment schedule and distribution. As set forth in subsection (b), which provides a list of optional Chapter 13 provisions, the debtor is given leeway to "include any other appropriate provision not inconsistent with [Title 11]." See id. § 1322(b)(11).

This discretion should not be confused with Congressional permission for a debtor to do whatever he or she pleases. The Bankruptcy Code allows debtors to reorganize their finances with the caveat that they repay a substantial amount of their debts under the proposed plans. As one court opined, "Congress intended to encourage payment plans under which all creditors would be paid most, if not all, of their claims over an extended period." In re Aalto, 8 B.R. 157, 160 (Bankr. M.D. Fla. 1981). To this end, the Bankruptcy Code requires that the proposed plan be confirmed by the court. See id. § 1324(a) (requiring the court to hold a hearing for confirming the plan). Under § 1325, the court is directed to consider a series of issues on the plan's compliance with applicable law, whether it is proposed in good faith, whether creditors' interests are being protected, and whether it is beneficial for the estate.

One of the issues the court must determine before confirmation is whether for every secured claim allowed under the plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Id. § 1325(a)(5)(B)(ii). In other words, the debtor must propose a plan that provides for distributing property that covers all secured creditors included in the plan to the full amount of their secured claims. See 8 COLLIER ON BANKRUPTCY ¶ 1325.06 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009). Once the plan is confirmed, the debtor and all creditors are bound to it. 11 U.S.C. § 1327(a); see also In re Szostek, 886 F.2d 1405, 1409 (3d Cir. 1989) ("[T]he binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.").

A Chapter 13 debtor is not automatically discharged when his proposed plan is confirmed. 11 U.S.C. § 1328(a). Generally, discharge is granted only when the debtor has made all payments under the plan. As a result, the Chapter 13 plan is only a temporary determination of the parties' rights; the final determination occurs "only upon the order denying or granting a discharge." In re Shaffer, 48 B.R. 952, 956 (Bankr. N.D. Ohio 1985).

It is important to note that Chapter 13 is a voluntary option for resolving bankruptcy issues. The debtor cannot be forced to petition for a Chapter 13 case. This voluntariness is also evidenced in the debtor's right to dismiss the case. He or she is not bound to complete the plan. Section 1307 provides a continuing right to request that the

case be dismissed or converted to one under Chapter 7. § 1307(a)–(b). The case may also be dismissed if upon request of a party in interest and after notice and hearing, the court determines that converting the case to one under Chapter 7 or dismissing the entire case is in the best interests of the creditors and the estate. § 1307(c). As a result, the debtor retains a wide degree of flexibility on whether to discontinue the case.

### B. Factual background

On April 22, 1999, Ms. Sanitate executed and delivered two mortgages to Green Tree. The first was for $109,250.00 with an annual percentage rate of 10.392%; the second was for $17,000.00 with an annual percentage rate of 17.566%.[3] These mortgages were secured by Ms. Sanitate's residence at 548 South 69th Street in Upper Darby, Pennsylvania. Since executing the mortgages, Ms. Sanitate has twice filed for Chapter 13 bankruptcy protection. This appeal stems from the second filing.

### 1. The first Chapter 13 filing

On September 12, 2000, Ms. Sanitate filed for Chapter 13 bankruptcy protection. On November 14, 2000, she filed a motion to bifurcate the larger Green Tree mortgage into a secured and an unsecured claim. After a hearing held on December 4, 2000, the court granted Ms. Sanitate's motion on December 7, 2000.

On April 17, 2001, Ms. Sanitate filed her second amended Chapter 13 plan. After a confirmation hearing held on May 15, 2001, the plan was confirmed on the same day.

---

[3] Ms. Sanitate contends that she only expected one loan but that Green Tree split the loan in violation of TILA. Green Tree counters that these mortgages are actually refinancings of two pre-existing mortgages on the property.

Per the prior order bifurcating the claim, Green Tree was given a $40,000 secured claim for the larger mortgage under the plan; the remainder would be unsecured. The smaller mortgage was wholly avoided. The $40,000 amount was to be satisfied over a series of fifty-five payments. At no point did Green Tree file a proof of claim or any other objection to this plan.

After paying approximately $23,000 of Green Tree's claim, Ms. Sanitate defaulted in 2003. On January 22, 2004, Green Tree filed a motion requesting the court lift the automatic Chapter 13 stay on the premises. Before the court ruled on the motion, the parties reached an agreement on April 30, 2004. Under the terms of that agreement, Ms. Sanitate could continue with her Chapter 13 plan so long as the stream of payments to Green Tree for the next six months were adjusted to cover the accruing default. The court approved the agreement on May 5, 2004.

On May 18, 2004, Green Tree moved to dismiss the case because Ms. Sanitate failed to make her first payment per the parties' agreement. The court granted the motion and dismissed the case on June 15, 2004. At the time of dismissal, $17,000 had been remaining on Ms. Sanitate's obligations to Green Tree under the Chapter 13 plan. In August 2004, Green Tree initiated a mortgage foreclosure action on Ms. Sanitate's home by filing a complaint in the Court of Common Pleas for Delaware County, Pennsylvania.

### 2. The second Chapter 13 filing

On June 15, 2005, Ms. Sanitate commenced a new Chapter 13 case, which stayed the foreclosure proceedings. Unlike the 2001 bankruptcy, Green Tree filed a proof of

claim on the larger mortgage for $133,219.91. That amount included all arrearages accumulated since June 2004 up to that point.

As an objection to the proof of claim, Ms. Sanitate filed an adversary action against Green Tree on November 21, 2005. Her complaint sought to bind Green Tree to the 2001 bankruptcy plan, which would limit its claim to $17,000. Though she had little income, Ms. Sanitate represented that she would be able to borrow up to $20,000 from friends or relatives, provided that the payment liquidated Green Tree's claim. Additionally, the complaint contained a claim for recoupment[4] for alleged TILA and HOEPA violations. With the borrowed money and the recoupment, Ms. Sanitate believed she would be able to satisfy any obligation she owed to Green Tree. Green Tree filed its answer on December 22, 2005.

On July 10, 2006, Green Tree filed a motion for relief from the Chapter 13 stay because Ms. Sanitate remained in default since July 1, 2003. On August 3, 2006, the court issued an order notifying Ms. Sanitate that the automatic stay on the foreclosure proceedings would be lifted unless she made a first protection payment of $250 and a second payment of $1250. Ms. Sanitate failed to make the first payment. On September 1, 2006, Green Tree filed a Certificate of Default, and the court lifted the stay.

---

[4] Recoupment is "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." BLACK'S LAW DICTIONARY (8th ed. 2004). Here, Ms. Sanitate seeks to reduce the amount of Green Tree's Proof of Claim through the damages she believes she is entitled to recover under TILA and/or HOEPA.

### 3. Motion to dismiss Chapter 13 case and adversary proceeding

On October 11, 2006, Green Tree moved to dismiss both the adversary proceeding and the bankruptcy case, pursuant to 11 U.S.C. § 1307 . It contended that Ms. Sanitate's continued failure to make her mortgage payments weighed against her and that her plan could not be confirmed because she failed to demonstrate the ability to fund a viable Chapter 13 plan, as required by § 1325(a)(5)(B)(ii).

In her response, Ms. Sanitate indicated that if she were successful in the adversary proceeding so as to limit Green Tree's claim to $17,000 (the amount remaining from the 2001 plan), she could liquidate the claim by borrowing the money. To cover any interest or other arrears that had accumulated since she stopped paying, Ms. Sanitate would apply those amounts to be recovered through her TILA and HOEPA recoupment claims. Thus, by adding the borrowed $20,000 to the potential TILA and HOEPA recoupment, Ms. Sanitate believed Green Tree's claim would be satisfied.

After a trial and consideration of post-hearing briefs, the Bankruptcy Court granted Green Tree's motion and dismissed both proceedings. In its order, the court refused to confirm the proposed plan because Ms. Sanitate had failed to demonstrate that she could fund her proposed plan. The court rejected Ms. Sanitate's argument that Green Tree was still bound to the terms of the 2001 plan. When that action was dismissed, the plan was dismissed as well. As a result, the $20,000 to be borrowed from friends or relatives was insufficient by itself to satisfy Green Tree's claim. Even assuming Ms. Sanitate could re-bifurcate the larger mortgage to a secured claim for $40,000 and prevailed on her

recoupment claims, the court found that she still would not be close to decreasing Green Tree's claim to any amount she claims to be able to borrow. Because Ms. Sanitate failed to demonstrate that she had sufficient property to fund her plan, the court dismissed the case.

## II. Analysis

28 U.S.C. § 158(a) grants district courts jurisdiction to hear appeals from the bankruptcy court. Review of the bankruptcy court's findings of fact is for clear error; review of the court's legal determinations is *de novo*. See, e.g., In re Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 316 (3d Cir. 2003) (citing In re Cont'l Airlines, 125 F.3d 120, 128 (3d Cir. 1997)).

### A. Issues presented

The key issues Ms. Sanitate raises are (1) whether Green Tree was bound to accept the determination set forth in the 2001 plan, and (2) whether she had valid TILA claims.[5]

---

[5] Ms. Sanitate's brief presents the issues as:

> 1. Did the Bankruptcy Court, in its Orders, address in any way the principal issue litigated and briefed in connection with the adversary proceeding, i.e., whether the Debtor was entitled to assert res judicata or collateral estoppel from a determination in the course of a prior bankruptcy case as to the amount of the claim of Green Tree?
>
> 2. Had that issue been addressed, was not Green Tree bound to the determination of the amount of its claim in the prior case, especially since it had accepted over 30 payments towards its claim in that case with no objections thereto?
>
> 3. Did the Debtor further have meritorious Truth-in-Lending Act recoupment claims against the claim of Green Tree?

I will affirm the Bankruptcy Court's decision. Ms. Sanitate's assertion that Green Tree must continue to accept the 2001 plan's determinations is erroneous. Furthermore, her TILA and HOEPA claims are of no consequence because she has failed to demonstrate that her recoupment claims, if successful, would compel a different ruling on her ability to fund the plan.

### 1. Green Tree is not bound by the prior plan

Ms. Sanitate contends that the Bankruptcy Court did not address her argument, based on theories of issue preclusion and *res judicata*, that Green Tree was required to accept the provisions of the prior plan, to the extent that those decisions were based on court orders. (Appellant's Br. at 9.) Instead, the Bankruptcy Court was allegedly too focused on what effect the prior plan still had. Unfortunately, Ms. Sanitate is wholly mistaken. Green Tree is not bound by the terms of the 2001 plan. By statute, the dismissal of that case freed Ms. Sanitate, Green Tree and any other parties in interest from its terms. Any preclusive effect associated with the confirmation of the prior plan (including the contents of that plan) was voided when the confirmation plan itself was dismissed.

---

(Appellant's Br. at 2.)

### i. Section 349 and the effects of dismissal

Ms. Sanitate's argument is directly contradicted by statute. Under Section 349, the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in *before* the case was initiated. In pertinent part, that section reads:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–
>
> (1) reinstates
>
> (A) any proceeding or custodianship superseded under section 543 of this title;
>
> (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
>
> (C) any lien voided under section 506(d) of this title;
>
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and –
>
> (3) revests the property of the estate in the entirety in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349. Courts have interpreted this section as having the general effect of restoring the *status quo ante*. See, e.g., In re Lewis & Coulter, Inc., 159 B.R. 188, 190 (Bankr. W.D. Pa. 1993); accord In re Johnson, 210 B.R. 134, 137 (Bankr. W.D. Tenn. 1997) ("[T]he dismissal of a bankruptcy case restores the parties as far as possible to their pre-petition status."); In re Irons, 173 B.R. 910, 910–911 (Bankr. E.D. Ark. 1994)

("[Section 349] negates, as it was intended to, the consequences of the filing of the petition in bankruptcy where the case is dismissed without discharge."). These broad readings are in harmony with Congress' stated intent that the purpose of this section is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S. Rep. No. 989, 95th Cong., 2d Sess. 48–49 (1977).

Subsection (b)(3) directly provides that property is returned to those persons who held it before the bankruptcy proceedings began and in the same condition. In this case, Green Tree had a substantial mortgage on the property. Under the 2001 plan, it was scheduled to receive only $40,000. But, when the case was dismissed, the residence was restored to Ms. Sanitate with Green Tree's encumbrances on it again.

### ii. *Res judiciata* does not apply

Ms. Sanitate's argument that either *res judicata* or issue preclusion applies is without any basis. A central element to these theories as applied in federal courts is the element of finality. A litigant proceeding under either theory must demonstrate that a prior action was concluded with a final and valid judgment on the merits. See In re Graham, 973 F.2d 1089, 1093 (3d Cir. 1992) ("[*Res judicata*] applies to claims that were or could have been raised in a prior action involving the parties and their privies when the prior action had been resolved by *a final judgment on the merits*." (internal quotation marks omitted) (emphasis added) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980))); id. at 1097 ("Issue preclusion applies when (1) the issue sought to be precluded [is] the

-12-

same as that involved in the prior action; (2) the issue [was] actually litigated; (3) it [was] determined by *a final and valid judgment*; and (4) the determination was essential to the judgment . . . ." (alterations in original) (internal quotation marks omitted) (emphasis added) (quoting In re Braen, 900 F.2d 621, 628–29 n.5 (3d Cir. 1990))).

      I will affirm the Bankruptcy Court because I find that no final judgment existed after the 2001 case and plan were dismissed. The dismissal of a Chapter 13 case requires disregarding the associated plan. See In re Nash, 765 F.2d 1410. 1413 (9th Cir. 1985) ("The dismissal [of a Chapter 13 case] effectively vacate[s] the . . . confirmed plan."). The plan may be thought of as a "new contract running between the debtor and all of his creditors," but it does not replace the contracts already existing between those parties. In re Hay, 2008 WL 5158577, at *4 n.6 (Bankr. M.D. Pa. Nov. 13, 2008) (quoting In re Thompson, 224 B.R. 360, 366 (Bankr. N.D. Tex. 1998)); accord Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 379 (D.N.J. 2006) (stating that a Chapter 13 plan "operates as only a provisional determination" of the debtors and creditors' rights); In re Cox, 381 B.R. 525, 528 (Bankr. E.D. Tenn. 2008) (same); In re Shaffer, 48 B.R. 952, 956 (Bankr. N.D. Ohio 1985) (same).

      No final judgment existed because a Chapter 13 debtor is not automatically freed of his or her existing obligations when he or she files the petition or when the plan is confirmed. The liabilities are erased if, and only if, (1) the debtor completes all payments and other obligations required by the confirmed plan, and (2) the court discharges the debtor. 11 U.S.C. § 1328(a) ("As soon as practicable after completion by the debtor of all

payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant a discharge of all debts provided for by the plan . . . ."). So long as the case is ongoing, the debtor's liabilities to any creditors provided for in the plan are merely "stayed." If the case is dismissed, the stay is removed, and as discussed above, all parties are returned to their positions before the case was filed. Consequently, the plan's terms are only effective so long as the case is ongoing.

Here, Ms. Sanitate's contention that Green Tree is required to accept the terms of the prior Chapter 13 plan fails as a matter of law. The prior Chapter 13 case was dismissed after she defaulted on her obligations under the plan. Upon dismissal, the then-existing plan was voided. The decisions made regarding the plan itself are also undone.

Ms. Sanitate's argument is truly based on non-existing technicalities. Neither *res judicata* nor issue preclusion apply because no final judgment exists. Those decisions that "crammed down" Green Tree's lien to a secured claim for a much smaller amount were valid only so long as Ms. Sanitate abided by the plan. If she had completed the plan and been discharged, I would agree that Green Tree would have no recourse for any lost portions of its lien. That is not this case. Ms. Sanitate failed to complete the plan, and it was dismissed. With no legal authority directly on point, Ms. Sanitate proposes to have the rulings of a dismissed case carry preclusive weight.[6] I am unpersuaded and find it

---

[6] I note that none of the cases Ms. Sanitate cites presents facts where a Chapter 13 debtor who defaulted on a prior plan succeeded in binding his or her creditors to those same terms. Seigel v. Fed. Home Loan Mortgage Corp., 143 F.3d 525 (9th Cir. 1998), concerned a mortgagor who filed contract and tort claims against the mortgagee in a separate proceeding while his own

patently non-sensical to argue that, in this situation, she may now refile and expect her secured creditors (who had been losing money during the periods of non-payment) to be bound to that prior plan.

### 2. Truth in Lending Act liability

Ms. Sanitate also presents a recopument argument. (See Appellant's Br. at 16–21.) She contends that the Bankruptcy Court failed to consider the viability of her claims under TILA and HOEPA. She alleges that (1) Green Tree violated TILA by engaging in "loan-splitting"; (2) the Section 32 disclosure[7] for the smaller mortgage did not comply with HOEPA's statutory requirements; (3) she was not provided with a copy of the Section 32 disclosure for the smaller mortgage, as required by HOEPA; and (4) the HOEPA-mandated Notice of Right of Rescission as to the smaller mortgage was inappropriate. (Id.) Under TILA, Ms. Sanitate would be entitled to $2000 in statutory damages if successful on her "loan-splitting claim." 15 U.S.C. § 1640(a)(2)(A)(iii) (2006). Under HOEPA, she could recover all finance charges paid in connection with the problematic loan and an award of attorney's fees. Id. § 1640(a)(3)–(4). Ms. Sanitate believes that adding this potential recoupment to the alleged $20,000 would be sufficient to fund the plan and satisfy Green Tree's claim.

---

bankruptcy case was pending. In re Baudoin, 981 F.2d 736 (5th Cir. 1995), presented a somewhat similar situation where debtors tried to bring lender liability actions in state court after they had failed to allege such claims in bankruptcy court. Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 1999 WL 284788 (N.D. Ill. Apr. 26, 1999), was limited to whether a debtor could bring a Fair Debt Collection Practices Act claim independent of the underlying bankruptcy proceeding.

[7] The Section 32 disclosure is the pre-closing disclosure mandated by HOEPA. See In re Williams, 291 B.R. 636, 649 (Bankr. E.D. Pa. 2003).

I disagree.  In footnote five, the Bankruptcy Court wrote in part:

> Based on the Debtor's testimony, if accepted, Green Tree's allowed secured claim potentially could be determined to be $40,000.  If successful with respect to her asserted Truth in Lending recoupment claims, the Debtor would be entitled to no more than $2,000 in statutory damages and attorneys [sic] fees and costs.  The Debtor also asserts the right to recoupment of finance charges allegedly paid with respect to a mortgage in the original amount of approximately $17,000, executed by the Debtor and delivered to Green Tree on April 22, 1999.  However, the $17,000 mortgage was not the subject of Green Tree's proof of Claim and the Debtor did not proffer evidence of the amount of finance charges she allegedly paid with respect to this second loan.

Sanitate v. Green Tree Consumer Disc. Co. (In re Sanitate), Ch. 13 Case No. 05-18324, Adv. No. 05-00672, slip. op. at 7 n.5 (Bankr. E.D. Pa. Mar. 12, 2007) (Frank, J.) (order granting motion to dismiss).  I will affirm because the Bankruptcy Court correctly determined that Ms. Sanitate had demonstrated the ability to fund a Chapter 13 plan, per § 1325(a)(5)(B)(ii).  The alleged violations relating to the second mortgage may be disregarded because Green Tree's proof of claim was limited to the first mortgage, and even assuming Ms. Sanitate prevailed on her TILA and HOEPA claims, she did not provide any sufficient proof of damages demonstrating she could fund a plan.

### i. Recoupment limited to Green Tree's first mortgage

Ms. Sanitate may not seek recoupment for any alleged violations associated with the second, smaller mortgage.  "A [recoupment] claim may be asserted . . . if the claim arises from the same contractual transaction as the plaintiff's claim and essentially functions as a defense to that claim."  Integra Bank/Pittsburgh v. Freeman, 839 F. Supp.

326, 330 (E.D. Pa. 1993). As the Third Circuit noted, recoupment in the context of bankruptcy is most readily recognized "where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract." Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984). Green Tree's Proof of Claim is limited to the first, larger mortgage alone. The smaller mortgage is not at issue. Indeed, that was a different contract altogether. Consequently, Ms. Sanitate's recoupment action must be limited to the larger mortgage only.

### ii. Lack of proof

The Bankruptcy Court noted that even assuming Ms. Sanitate could prevail on her claims with respect to the smaller mortgage, she did not present evidence of the finance charges she allegedly paid. Sanitate v. Green Tree Consumer Disc. Co. (In re Sanitate), Ch. 13 Case No. 05-18324, Adv. No. 05-00672, slip. op. at 7 n.5. I agree. My review of the record finds no definitive testimony clearly setting forth Ms. Sanitate's proposed recoupment. Allowing Ms. Sanitate to proceed would violate the statutory mandate that a debtor demonstrate that the plan will distribute sufficient property to satisfy all listed secured creditors.[8] See § 1325(a)(5)(b)(ii). The court would merely be guessing at the potential recovery.

---

[8] As Judge Frank explained, Ms. Sanitate cannot limit Green Tree's claim to $17,000. Assuming Ms. Sanitate succeeded in re-bifurcating Green Tree's claim to $40,000, was able to borrow $20,000, and received $2000 for her "loan splitting" claim, $18,000 would still be owing to Green Tree. Ms. Sanitate has not shown how any HOEPA recoupment would resolve this difference.

### III. Conclusion

For the foregoing reasons, I will affirm the Bankruptcy Court's decision and deny the appeal.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: MARY R. SANITATE         :      CIVIL ACTION
                                :
                                :      NO. 07-1516
                                :

**O R D E R**

**STENGEL, J.**

      **AND NOW**, this 31st day of March, 2009, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that the decision of the Bankruptcy Court is AFFIRMED and the appeal is DENIED.

      The Clerk of the Court shall mark this case CLOSED for statistical purposes.


                                BY THE COURT:


                                /s/ Lawrence F. Stengel
                                LAWRENCE F. STENGEL, J.